```
             IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF HAWAII

LEMOE TUA                    )   Civil NO. 22-00066 SOM-WRP
                             )
          Plaintiff,         )   ORDER GRANTING DEFENDANT
                             )   BARCLAYS BANK DELAWARE'S
                             )   MOTION TO DISMISS
                             )
    vs.                      )
                             )
BARCLAYS BANK DELAWARE;      )
EQUIFAX INFORMATION SERVICES,)
LLC,                         )
                             )
          Defendants.        )
                             )
_____)
```

**ORDER GRANTING DEFENDANT
BARCLAYS BANK DELAWARE'S MOTION TO DISMISS**

**I.   INTRODUCTION**

This case arises out of Plaintiff Lemoe Tua's allegations that his credit reports contained misleading information. Tua's wife had a credit card issued by Defendant Barclays Bank Delaware, and her account had a history of late payments. Tua was an authorized user of the credit card, which meant that he could charge things but was not liable for paying the account balance. Barclays accurately reported those facts to credit reporting agencies that, in turn, included the Barclays account on Tua's credit reports. Tua alleges that lenders viewed that information negatively. He also claims that, by accurately informing the reporting agencies that he had been authorized to use an account with a history of delinquent payments, Barclays

violated the Fair Credit Reporting Act.

Barclays now moves to dismiss. It argues that it did not violate the Fair Credit Reporting Act because its reporting was accurate. This court agrees. The Barclays reports were neither inaccurate nor misleading. Barclays is not responsible for lenders' negative view of information that was accurately reported. The motion to dismiss is granted.

**II.     BACKGROUND**

**A.    Authorized User Accounts and Credit Reports.**

An authorized user is a person who is added to a credit card account by the primary cardholder. ECF No. 1, PageID # 8, ¶ 31. Once added, the authorized user can use the account to make purchases. *Id.* ¶ 32. The authorized user, however, is not responsible for making payments on the account. *Id.* ¶ 34.

Under the Equal Credit Opportunity Act (ECOA), if the spouse of a primary cardholder is authorized to use a credit card account, banks are *required* to report that fact to credit reporting agencies such as Equifax or TransUnion. Congress enacted ECOA to "eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Bros. v. First Leasing*, 724 F.2d 789, 793-94 (9th Cir. 1984). ECOA granted the Federal Reserve Board the power to "prescribe regulations to carry out the [Act's] purposes," and that authority later passed

to the Consumer Financial Protection Bureau.  15 U.S.C. § 1691b. Both the Reserve Board and the CFPB promulgated a regulation ("Regulation B") that requires furnishers of credit information to designate accounts to "reflect the participation of both spouses if the [account holder's] spouse is *permitted to use* or is contractually liable on the account," and to include information about both spouses in its reports to credit ratings agencies.  12 C.F.R. § 1002.10 (emphasis added); *see also* 12 C.F.R. § 202.10; *Morse v. USAA Fed. Sav. Bank*, 2012 WL 6020090, at *3 (D. Nev. Dec. 3, 2012) ("Regulation B requires that when a credit card has been issued to a married individual, the creditor must report the account in the name of both spouses."); *Frazier v. Equifax Info. Servs., LLC.*, 2017 WL 2664206, at *1 (E.D. Tex. June 5, 2017) ("Indeed, when an authorized user is the account holder's spouse, the creditor must report the authorized user pursuant to rules promulgated under the Equal Credit Opportunity Act."), *report and recommendation adopted*, 2017 WL 2654923 (E.D. Tex. June 20, 2017).

Consumer reporting agencies include authorized user accounts in their credit reports.  *See* ECF No. 1, PageID # 8, ¶ 35.  Those reports are sent to issuers of credit, who use FICO scores and other algorithms to interpret the credit report and determine a consumer's overall creditworthiness.  *Id.* at 7, ¶¶ 23-29.  Frequently, creditors penalize a consumer for delinquent

payments on an account they were authorized to use, even though the consumer is not directly responsible for the payments.  *See id.* at 8-10, ¶¶ 35, 43; *see also* ECF No. 29, PageID # 131 n.3.

**B.   Tua's Authorized User Accounts.**

In April 2021, Tua obtained copies of his Equifax and TransUnion credit reports.  ECF No. 1, PageID # 10, ¶ 42.  Those reports stated that Tua was an authorized user of three credit card accounts that had a history of late payments. *Id.* ¶ 43.  One of those accounts was a Barclays credit card account held by Tua's wife.  *Id.* ¶ 44.  Tua concedes that the report accurately included that item; he acknowledges that he was authorized to use the Barclays account.  *See* ECF No. 29, PageID # 121 ("Mr. Tua was only an authorized user of the Account.").

According to Tua, the Barclays account is now closed. *Id.* at 12, ¶ 58.  His wife no longer has the full credit card number or access to the Barclays online portal.  *Id.*  Tua therefore maintains that his wife does not have the ability to remove him as an authorized user.  *See* ECF No. 29, PageID # 122.  Indeed, at this point, it is not clear what it would mean for him to be "removed."  While Tua's authorization to use an active account could be revoked, his past authorization to use his wife's account is a historical fact.[1]  Neither Barclays nor Tua's

---

[1]   Tua has never alleged that he was added as an authorized user without his consent or against his will.

wife can change that.

In any event, in July 2021, Tua sent letters to Equifax and TransUnion contending that there were three authorized user accounts that should not be included in his credit report. *Id.* at 11, ¶ 48-49. He stated that he "was not under any financial obligations for the accounts" and "requested that the accounts be removed [from his credit reports]." *Id.* ¶ 49. According to Tua, TransUnion and Equifax forwarded his letters to Barclays. *Id.* ¶ 52.

TransUnion deleted all three accounts from Tua's credit report. *Id.* ¶ 53. Equifax deleted two of the accounts, but refused to delete the Barclays account. *Id.* at 11-12, ¶¶ 54-56. Instead, it "reported that the [Barclays account] was verified as 'belonging to [Tua]' even though the [Barclays account] still reported [Tua] as an authorized user." *Id.* at 12, ¶ 55. In other words, Tua appears to be alleging that when Equifax contacted Barclays about the account, Barclays confirmed that Tua had been authorized to use the account[2] (because the account "still reported Tua as an authorized user"). *See id.* Equifax therefore refused to remove the account from its credit report. *See id.* Tua does not seem to be asserting that Barclays

---

[2] Tua has never alleged that Barclays inaccurately told Equifax that the account was still active, even after it had been closed.

5

incorrectly told Equifax that Tua was personally responsible for making payments on the account.

Tua maintains that lenders have viewed him negatively because he had been authorized to use the Barclays account. *Id.* at 14. Specifically, he alleges that in August and September of 2021, he applied to refinance his mortgage and "was approved at less favorable terms" because the Barclays account affected his credit score. *Id.* ¶ 69. He also contends that he got a Bank of America credit card at unfavorable terms for the same reason. *Id.* ¶ 70.

**C.   This Action.**

On February 17, 2022, Tua filed a Complaint against Equifax and Barclays. ECF No. 1. Tua subsequently stipulated to the dismissal of Equifax's claims with prejudice. ECF No. 33. Only his claims against Barclays remain.

Tua contends that Barclays violated 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act. Under that statute, companies who furnish information to credit reporting agencies must (1) conduct an investigation when a consumer disputes information that they have reported and (2) take appropriate action if they discover that their reporting was incorrect. *See* ECF No. 1, PageID # 18, ¶ 99. Tua appears to be arguing that Barclays failed to comply with that provision. *See id.* at 19, ¶¶ 100-104. Specifically, he contends that once Equifax forwarded

the letter stating that Tua was not under any financial obligation to pay the account balance to Barclays, Barclays "possessed all relevant information about the account and should have deleted it." *Id.* ¶ 104.

Although Tua says that Barclays is liable for failing to "delete" the account, he has never alleged that he or his wife called Barclays and asked Barclays to remove his name from the account (which, in any event, was closed). Instead, Tua seems to be contending that either (1) when Equifax asked Barclays if Tua had been authorized to use the account, Barclays should have responded that he had not been authorized (even though he was), or (2) when Equifax asked Barclays if Tua had been authorized to use the account, Barclays should have deleted his name from the account and then told Equifax that Tua had never been listed on the account, even though Tua had never asked Barclays to do that and the account was already closed.

On April 8, 2022, Barclays moved to dismiss. ECF No. 21. Barclays maintains that it did not violate the Fair Credit Reporting Act because it accurately reported that Tua had been authorized to use his wife's account. *See generally id.*

### III.    LEGAL STANDARD.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's review is generally limited to the contents of a complaint. *Sprewell v. Golden State Warriors*, 266

7

F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell*, 266 F.3d at 988; *Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Twombly*, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**IV.     ANALYSIS.**

Tua claims that Barclays violated 15 U.S.C. § 1681s-2. That statute prohibits businesses from "furnish[ing] information relating to a consumer to any consumer reporting agency" if (1) the business "has been notified by the consumer . . . that specific information is inaccurate," and (2) "the information is, in fact, inaccurate." 15 U.S.C. § 1681s-2(a)(1)(B). Moreover, if businesses are notified of a dispute concerning the accuracy of information they have already provided, they must conduct an investigation. 15 U.S.C. § 1681s-2(b)(1)(A-C). If the information is found to be inaccurate, the business must report that fact and (1) "modify that item of information," (2) "delete that item of information," or (3) "permanently block the reporting of that item of information." 15 U.S.C. § 1681s-2(b)(1)(D-E).

Tua alleges that Barclays violated these provisions by informing Equifax that he had been authorized to use his wife's account even though Equifax had forwarded to Barclays the letter

stating that Tua was not under any financial obligation to pay account balances. ECF No. 1, PageID # 18-22. Barclays responds that it did nothing wrong because its reporting was accurate. ECF No. 21, PageID # 86-91. The court agrees with Barclays.

The Ninth Circuit has held that a report can be "inaccurate" under 15 U.S.C. § 1681s-2(b) in one of two ways: (1) it "is 'patently incorrect,'" or (2) it is "'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)). Under the second prong, information is misleading if it "is presented in such a way that it creates a misleading impression." *Gorman*, 584 F.3d at 1163 (internal quotation marks omitted). A technically accurate report may be misleading if, for instance, it is likely to be misinterpreted by the reader. *See Shaw*, 891 F.3d at 757.

Barclays' reporting was neither incorrect nor misleading. Barclays correctly informed Equifax that Tua had been authorized to use his wife's account. That statement could not have been misinterpreted. Barclays did not imply that Tua had an obligation to make the delinquent payments on the account. Nor did the report create confusion over the meaning of Tua's status as an authorized user of the account. While the Complaint states that Equifax verified the account as "belonging" to Tua,

it does not allege that Equifax was confused.  To the contrary, Tua asserts that Equifax *knew* that Tua did not have to pay the overdue balance.  See ECF No. 1, PageID # 12, ¶ 55, 56.  Because its reporting was correct, Barclays did not violate 15 U.S.C. § 1681s-2 by confirming that Tua was in fact authorized to use his wife's account.  *See, e.g.*, *Ostiguy v. Equifax Info. Servs.*, 2017 WL 1842947, at *3 (W.D. Tex. May 4, 2017) ("Nor is the credit entry listing Plaintiff as an authorized user of the Account misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.  Plaintiff is simply listed as an 'authorized user' of the Account—a listing which Plaintiff concedes is completely accurate."), *aff'd sub nom. Ostiguy v. Equifax Info. Servs., L.L.C.*, 738 F. App'x 281 (5th Cir. 2018); *Frazier*, 2017 WL 2664206, at *1 ("As other district courts have concluded, the listing of a consumer as an 'authorized user' of an account when the consumer is actually an authorized user is not misleading under the FCRA.").

That conclusion avoids a conflict between the Fair Credit Reporting Act and Regulation B.  Regulation B required Barclays to report that Tua had been authorized to use his wife's account.  12 C.F.R. § 1002.10; *see also* 12 C.F.R. § 202.10.  Tua may be correct in asserting that, in the event of a conflict between the Fair Credit Reporting Act and Regulation B, the Fair Credit Reporting Act prevails.  It would be perverse if a

regulation enacted by the Federal Reserve Board and the Consumer Financial Protection Bureau to protect consumers from discrimination authorized the reporting of misleading information.[3]  *See Abbett v. Bank of Am.*, 2006 WL 581193, at *6 (M.D. Ala. Mar. 8, 2006) ("This Court assumes, without deciding, that a regulation that conflicts with a statute under which it was not promulgated is invalid or, at the very least, must yield to the statute.").  But, for the reasons discussed above, there is no such conflict.  Regulation B directs businesses to tell credit agencies if consumers are authorized users on their spouse's accounts.  There is nothing misleading about that.

None of Tua's contrary arguments is persuasive.  Tua first contends that the Barclays report was "misleading because it negatively affected [his] credit score and thus his perceived creditworthiness, despite [his] total lack of responsibility for the payment history" on his wife's account.  ECF No. 29, PageID #

---

[3]  Staff guidance interpreting Regulation B appears to indicate that "a creditor need not distinguish between accounts on which the spouse is an authorized user and accounts on which the spouse is a contractually liable party."  12 C.F.R. § Pt. 202, Supp. I.  This court can conceive of circumstances in which that guidance could conflict with the Fair Credit Reporting Act. It would, for example, be misleading to imply that a creditor is a joint account holder responsible for making payments on the account when that is not so.  That question, however, is not before this court, because Tua seems to concede that Barclays accurately reported that he was an authorized user on his wife's account.  *See* ECF No. 29, PageID # 128 ("Here, Mr. Tua contends that reporting him as an authorized user on the negative Account (not joint), after he disputed its presence on his credit report, is misleading.").

129-30; *see also id.* at 131 ("The fact that credit scores incorporate negative authorized user information as though the consumer is personally liable for the account makes clear that the way that the account was reported misleads creditors."). That assertion only addresses half of the governing legal standard. Under the Fair Credit Reporting Act, statements are actionable if they are both expected to adversely affect credit decisions *and* are misleading. *Shaw*, 891 F.3d at 756 (internal citations omitted). Even if the negative payment history on the Barclays account affected Tua's credit score, Barclays is only responsible for that if it made misleading statements. *Saunders v. Equifax Info. Servs. LLC*, 2017 WL 3940942, at *4 (W.D. Tex. Aug. 3, 2017) ("While Plaintiff's accurate credit entry may be negatively perceived by third parties, credit reporting agencies only have a duty to make a reasonable effort to report accurate information on a consumer's credit history." (internal quotation marks omitted)), *aff'd sub nom. Ostiguy v. Equifax Info. Servs., L.L.C.*, 738 F. App'x 281 (5th Cir. 2018). Barclays made no inaccurate or misleading statement.

Tua's real complaint is that lenders should not consider authorized user accounts when they make credit decisions.[4] Barclays has no control over those decisions. The

---

[4] As a practical matter, it is not unusual for spouses to share financial resources, or for a spouse to pay a partner's debts. Indeed, in community property states, spouses have some

13

only obligation the Fair Credit Reporting Act imposes on Barclays is to report truthful information to credit reporting agencies. By correctly informing Equifax that Tua was an authorized user on his wife's account, Barclays complied with the Fair Credit Reporting Act.

Tua also relies heavily on a concurring opinion in the Eleventh Circuit's decision in *Pedro v. Equifax, Inc.*, 868 F.3d 1275 (11th Cir. 2017). That opinion relied on allegations that the defendant had calculated the plaintiff's credit score itself. In *Pedro*, the plaintiff alleged that she was an authorized user on her parents' credit card account, an account that later went into default. *Id.* at 1277. "A consumer reporting agency, TransUnion LLC, listed the delinquent account on Pedro's credit report with a notation that she was an authorized user of the account." *Id.* TransUnion also "included the account when calculating Pedro's credit score, which caused her credit score to fall." *Id.* The plaintiff sued, alleging that TransUnion's reporting willfully violated the Fair Credit Reporting Act. *Id.*

The Eleventh Circuit concluded that the plaintiff had failed to state a willfulness claim because TransUnion could have reasonably relied on a narrow interpretation of the Fair Credit

---

responsiblilty for the debts of their partners. While that is not always the case, Tua does not establish that lenders are barred from considering late payments on an account that the individual is authorized to use when determining that individual's creditworthiness.

14

Reporting Act that permitted it to publish technically accurate information even if that information could be misleading. *Id.* at 1280-81. The Eleventh Circuit did not directly address the underlying issue of whether or not correctly reporting that the plaintiff was an authorized user of an account with a history of late payments was misleading, although the court's reasoning might be read as implying that it viewed the statements in that light. *See id.*

Judge Rosenbaum's concurring opinion expanded on that suggestion. He explained that:

> TransUnion reported that Pedro was only an authorized user on her parents' account. TransUnion also asserted during oral argument that those who use the reports would understand from the code TransUnion used to report her authorized-user status that Pedro was not financially responsible for her parents' delinquent account. *But significantly, the report appears to give no indication that including this account information caused Pedro's credit score to drop more than 100 points.* . . .
>
> We have said that FCRA's goals include fairness and equity to the consumer while still meeting the needs of commerce for accurate information in credit reports. Reporting delinquent "authorized user" accounts where the user is not financially responsible for the debt, *without indicating how including such information in the credit [report] affects the credit score* meets neither goal.

*Id.* at 1284 (Rosenbaum, J., concurring) (emphasis added). In other words, Judge Rosenbaum appeared to be concerned that

15

TransUnion's reporting of the authorized user account, *in conjunction with its calculation of the plaintiff's credit score*, was misleading. There are no allegations that Barclays calculated Tua's credit score here. Judge Rosenbaum's concurring opinion did not suggest that reporting that a consumer is an authorized user on a delinquent account, standing alone, is misleading. This court also notes that being listed as an authorized user of a delinquent account held by one's parents might arguably be distinguishable from being listed as an authorized user of a spouse's delinquent account.

Finally, at the hearing on this matter, Tua asserted that, once Tua disputed the credit reports that included the Barclays account, he ceased to be an authorized user. What Tua seems to be saying is that by disputing the accuracy of Equifax's credit report, he was telling Barclays he no longer wanted his name on the account. As a result, Tua argues, once notified of the dispute, Barclays should have taken his name off of the account and then told Equifax that Tua should not be listed as having ever been authorized to use the account. *Cf.* ECF No. 29, PageID # 124, 131-32.

As an initial matter, Tua has not actually alleged that he asked Barclays to take his name off the account. The Complaint only states that Tua sent Equifax a letter asking it to remove the account from his credit report because he "was not

16

under any financial obligation for the accounts." ECF No. 1, PageID # 11, ¶ 49. While Equifax may have forwarded that letter to Barclays, *see id.*, ¶ 51, nothing in the letter stated that Tua wanted to be removed as an authorized user from the account. This court cannot say that Barclays should have construed a letter informing *Equifax* that he did not have to pay the overdue balance on the account as a request for *Barclays* to remove him from the account altogether.

More fundamentally, it is hard to see how Barclays could remove Tua's name from an account that Tua says had already been closed. Barclays cannot change the historical fact that, until the account was closed, Tua was authorized to use it.[5] If Barclays had told the credit reporting agencies that Tua had never been authorized to use the account, it would have made a false statement. The Fair Credit Reporting Act certainly does not require banks to lie to credit reporting agencies.

---

[5] Tua raises the possibility that "a cardholder could . . . add an ex-spouse to a negative account as a retaliatory act to harm their [credit] scores." ECF No. 29, PageID # 132. If a husband informed Equifax or Barclays that he had been added to an account as a retaliatory act, and, after learning that fact, Equifax or Barclays refused to remove the husband's name from the account, the resulting report might be misleading, and one might have a basis for asserting a violation of the Fair Credit Reporting Act. No such allegations are presently before the court. Tua certainly has not alleged that he told Barclays that his wife added him to the account against his will or without his consent.

In sum, Tua has only alleged that Barclays correctly reported that he had been authorized to use his wife's account. That report was not inaccurate. Tua has failed to state a claim under 15 U.S.C. § 1681s-2.[6]

## V.	CONCLUSION.

Barclay's motion to dismiss is granted. The court notes that, during a scheduling conference, Tua indicated that he intends to seek leave to amend the Complaint. *See* ECF No. 40. The clerk is directed to stay the entry of judgment for 14 days to permit Tua to file a motion for leave to amend his Complaint. If no such motion is filed within that time, judgment should be entered in favor of Barclays, and this case should be closed.

It is so ordered.

DATED: Honolulu, Hawaii, July 14, 2022.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Tua v. Barclays et al.*, Civil No. 22-00066 SOM-WRP, ORDER GRANTING DEFENDANT BARCLAYS BANK DELAWARE'S MOTIONS TO DISMISS

---

[6] Because it is dismissing the Complaint on these grounds, this court need not address Barclays' alternative argument that Tua has not adequately alleged damages. ECF No. 21, PageID # 91-93.